SCHEER, Appellant, vs. KRIESEL, Respondent.

*January 16 — February 1, 1901.*

*Boundaries: Apportionment of shortage in line: Fences: Trespass: Punitory damages.*

A shortage in the line bounding several lots on one side having been found by a surveyor and by him apportioned between the lots, one lotowner, the plaintiff, set his fence accordingly upon land claimed by defendant, the owner of the adjoining lot, and the latter removed it by force. It appeared that by any theory of apportionment of the shortage the fence was either upon the line between the lots or wholly upon plaintiff's lot. *Held*, that the defendant was guilty of trespass in removing it, but, having acted in good faith, is not liable for punitory damages.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Reversed.*

Plaintiff was the owner of lot 13, and defendant of lot 12, in Gruenhagen's subdivision of certain land in Oshkosh. The recorded plat of that subdivision was made in 1866, and the material parts are portrayed by the solid lines and figures below:

There was no evidence of the actual location on the ground of any of the lines of that plat, except the exterior boundaries, namely, the north line of the plat, being the south side of Ceape street, and the southerly line of the plat, being the northerly line of Luscher's land. The location of those lines as they existed in 1866 was established. On the plat the lines of the lots fronting on Evaline street were apparently parallel. There was no dispute that, as the result of surveys, the line bounding those lots on the west was found to fall short, and that the south line of the plat in fact ran substantially in accordance with the dotted line, A B, so as to leave no frontage on that west line pertaining to lot 14, and only forty-four feet pertaining to lot 13, if the east and west lines were run parallel. In other words, the true south line infringed upon plaintiff's lot, if the same were surveyed by parallel lines, a distance of six feet on the back end. The east line of those lots was found to substantially correspond with the measurements indicated on the plat.

In 1894 the plaintiff procured a survey to be made by the city engineer, who found the shortage in question, ignored the disappearance of the west line of lot 14, called the total shortage six feet, and divided it between the three lots south of Car street, deducting two feet from each lot, and allowing as a back or west line to each forty-eight feet. Plaintiff in 1896 accordingly set his north fence at the west end forty-eight feet from the Luscher line, and ran the same diagonally towards the northeast corner of his lot. Defendant, with force and arms, tore up the fence and threw it over on plaintiff's lot, whereupon this action in trespass was brought. The jury returned a special verdict in which they fixed plaintiff's compensatory damages at eight dollars, punitory damages at three dollars, and found that the fence was built on the line established by plaintiff's surveyor. The sole question considered was whether that fence was upon defendant's land as matter of law, resulting

from the facts above stated. The court decided in the affirmative, and rendered judgment for the defendant, from which the plaintiff appeals.

For the appellant there was a brief by *Barbers & Beglinger*, and oral argument by *Fred. Beglinger.*

For the respondent the cause was submitted on the brief of *W. W. Waterhouse.*

Dodge, J.    The trial court held that the surveyor's method of ascertaining the width on their west lines of the several lots was erroneous, in that he apportioned the shortage of six feet only among the three lots south of Car street (lots 11, 12, and 13), whereas he should have apportioned that shortage throughout the whole line from Ceape street to Mrs. Luscher's land, which (Car street being substantially the width of a lot) would have divided the shortage by six, instead of by three, whence it would result that only one foot, instead of two, should be taken off each lot; and hence the court concluded that the point marked by the surveyor for the northwest corner of lot 13 was one foot too far north. We need not discuss the legal correctness of the court's view as to the apportionment of this shortage, since, assuming it to be correct, his conclusion is erroneous. His logic is correct up to the point that such apportionment justifies a deduction of only one foot from each lot, which would entitle each to forty-nine feet; but that is true with reference to the plaintiff's lot 13 as well as to any of the others, and the court's conclusion leaves the plaintiff but forty-seven feet, instead of forty-nine. The slightest reflection, or, in lieu thereof, an experiment upon a diagram giving to each of the lots in the entire plat forty-nine feet on the west line, will show that such apportionment would locate plaintiff's northwest corner one foot further north than the surveyor had located it. In no other way could he be given the forty-

Scheer vs. Kriesel.

nine feet to which he would be entitled, for the Luscher fence is an impregnable obstacle to extending his property further south.   This being so, of course the fence, instead of being on the true line between plaintiff and defendant, was one foot within the plaintiff's premises, and defendant was guilty of trespass in entering thereon and removing the fence.

Some suggestion is made by the court that lot 14, which on the plat has perhaps eight or ten feet of west line, is also entitled to be preserved in its outlines, and to have a westerly line accorded to it, diminished by its due proportion of the shortage.   If that be so, clearly all of the lines of the lots would be crowded some eight feet still further north. In brief, any theory of apportionment of the shortage in the west line of the lots fronting on Evaline street results in justifying a location for plaintiff's northwest corner at least as far north as where he built his fence, and the tearing up of the same was a trespass.   That fact being undisputed, and the jury having found all of the other necessary facts, judgment should have been rendered for the plaintiff for the amount of the compensatory damages found.   Defendant's good faith in believing his lot invaded by the fence is not impugned, and he should not suffer punitory damages.

*By the Court.*— Judgment is reversed, and cause remanded with directions to enter judgment in favor of the plaintiff for the amount of compensatory damages found by the verdict.